MURDOCK, Justice.

This is an action in assumpsit to recover $385 due as alleged from the defendant for funeral expenses incurred in behalf of defendant's husband, Harry H. Cohen, deceased. The case was tried in the superior court before a jury and a verdict for the full amount claimed was rendered. The case is here on defendant's exceptions.

The plaintiff is a licensed funeral director. On Saturday, November 1, 1930, he received a call from the Homeopathic Hospital where defendant's husband died. As Saturday is the Jewish Sabbath, the body could not, in accordance with the Orthodox Jewish faith, be removed on that day. Plaintiff accordingly went to the hospital and there embalmed and prepared the body for burial.

Plaintiff testified that after sunset he called on the defendant at her home and that defendant said she wanted her husband to have a "nice funeral"; that he told her what was needed and later took the body to her home; that he sent the defendant a bill but never heard from her with respect thereto. Defendant denied that she saw the plaintiff at her home or that she ever gave him any directions about the funeral.

[1] As the jury found in favor of the plaintiff, his version of the transaction must be taken as true. The question then arises as to whether by his own testimony he has made out a case against the defendant. The plaintiff, so far as appears, has made no attempt to collect the amount of his bill from the estate of Harry H. Cohen.

[2] The presumption of law is that funeral expenses are a charge against the estate of the deceased. Some one from the necessities of the case must engage a funeral director, and this is usually some member of the family or a relative of the deceased, since an administrator cannot be appointed in time to act in this behalf. O'Reilly v. Kelly, 22 R. I. 151, 46 A. 681, 50 L. R. A. 483, 84 Am. St. Rep. 833; Tucker v. Whaley, 11 R. I. 543; Rice v. New York Central & H. R. R. Co., 195 Mass. 507, 81 N. E. 285. The presumption is, even in the case of the widow of the deceased, that she, in engaging a funeral director, is doing so in behalf of the estate. Waterman & Sons v. Hook, 246 Mass. 522, 141 N. E. 596, 30 A. L. R. 440.

In Hayden v. Maher, 67 Mo. App. 434, the court said: "Primarily the estate of a decedent, and not his widow, is responsible for his funeral expenses. The mere fact that the widow requests the burial can not change the rule. * * * If the undertaker desires to hold the widow responsible, he must protect himself by her valid promise to pay. No promise to pay can be implied on her part from a bare request."

[3] The plaintiff does not rely on an express promise on the part of the defendant, and he has not testified to any facts or circumstances from which a promise could be implied other than the request by defendant that he conduct the funeral. This is not sufficient to overcome the presumption that the services were rendered on the credit of the deceased's estate.

The defendant's exception to the denial of her motion for a directed verdict is sustained.

The plaintiff may appear before this court on May 3, 1933, and show cause, if any he has, why the case should not be remitted to the superior court with direction to enter judgment for the defendant.

---

## COLEMAN v. McCARTHY.

No. 7219.

Supreme Court of Rhode Island.

May 3, 1933.

1. **Physicians and surgeons** ⟹18(8).

Whether physician used proper skill and diligence in treating injury must be determined by testimony of experts in medicine and surgery (Gen. Laws 1923, c. 342, § 18).

2. **Physicians and surgeons** ⟹13.

Physician's implied contract is to treat case with that degree of diligence and skill ordinarily possessed by average of members of profession in similar localities, regard always being had to state of medical profession at time.

3. **Physicians and surgeons** ⟹15.

Physician would not be responsible for error of judgment.

4. **Physicians and surgeons** ⟹18(10).

Instruction in malpractice action pointing out possible meaning of defendant's statements, whether expressions of regret or admissions of negligence, *held* not error where statements were susceptible of different meanings.

---

Exceptions from Superior Court, Providence and Bristol Counties; G. Frederick Frost, Judge.

Action by Kevin Coleman, p. a., against James M. McCarthy, Jr. Verdict for defendant, and plaintiff brings exceptions.

Exceptions overruled, and case remitted for entry of judgment on verdict.

Eugene L. Jalbert, of Woonsocket, for plaintiff.

Hinckley, Allen, Tillinghast, Phillips & Wheeler, S. Everett Wilkins, Jr., and Mason

⟹For other cases see same topic and KEY NUMBER in all Key Number Digests and Indexes

B. Merchant, all of Providence, for defendant.

MURDOCK, Justice.

This action of trespass on the case was brought to recover damages for improper treatment by defendant, a physician, of accidental injuries to the plaintiff, a minor, who sues by his next friend. The case was tried in the superior court before a jury and a verdict was returned for the defendant. The trial justice denied plaintiff's motion for a new trial and the case is here on plaintiff's exceptions (1) to the denial of his motion for a new trial; (2) to a part of the charge to the jury.

The plaintiff, on September 1, 1928, then a boy between six and seven years of age, sustained injuries when he fell off a fence. Defendant was called and found a fracture of the ulna of the left arm. He reduced the fracture and placed the arm in splints. There is no complaint that the fracture of the ulna was not properly treated. Plaintiff's case rests on the contention that the defendant failed to discover a dislocation of the radius either at the time of the accident or at a reasonable time thereafter.

The testimony was to the effect that defendant, after he reduced the fracture of the ulna, sent the plaintiff to a clinic for the purpose of having an X-ray taken of the injured arm. As the picture did not show all of the arm between the wrist and the elbow, defendant caused another to be taken which showed the forearm as far as the elbow. Neither picture revealed any injury to the radius. When the splints were removed, defendant discovered a condition which caused him to have another X-ray taken and this picture revealed a fracture of the radius. A specialist in orthopedic surgery in Boston was consulted and an operation was performed by this specialist. The condition of the arm improved after the operation but at the time of the trial there was considerable limitation of motion in the elbow.

[1] The medical testimony was that the defendant did everything under the circumstances that could be expected of an ordinary doctor practicing in the locality. In Barker v. Lane, 23 R. I. 225, 49 A. 963, the rule was laid down that the question as to whether the physician used proper skill and diligence in treating an injury must be determined by the testimony of experts in medicine and surgery.

Counsel for plaintiff contends that this rule while it was correct when it was announced should now be modified, and in support of this contention makes the startling statement—which he states is based on his experience in attempting to obtain expert medical testimony to support the charge of negligence on the part of a defendant—that unless the rule is modified "there is no possible way for any one who suffers injury at the hands of a negligent physician to recover his just damages." This statement, if true, is a matter of grave concern to those charged with the administration of justice. We are not convinced, notwithstanding the experience of plaintiff's counsel, that the ethical standards of the medical profession countenance a course so subversive of justice and so opposed to the duty which the profession owes to the public.

We are not informed how far afield plaintiff's counsel went in his search for medical testimony. There might be a natural reluctance on the part of physicians practicing in the same locality to appear as experts against a fellow practitioner. We cannot believe that there are not in this state many well-qualified physicians who would be willing to assist by their testimony a person who was a victim of malpractice.

Plaintiff's counsel might have had recourse to section 18, chapter 342, Gen. Laws 1923, where it is provided that: "Any justice of the superior court may, in any cause, civil or criminal, on motion of any party therein, at any time before the trial thereof, appoint one or more disinterested skilled persons, whether they be residents or non-residents, to serve as expert witnesses therein."

[2] The only medical testimony, besides the testimony of the defendant, was given by Dr. Charles F. Gormly of Providence who, at the request of the defendant, made an examination of the plaintiff in March, 1931, for the purpose of determining the condition of his elbow at that time. Dr. Gormly was summoned as a witness for plaintiff. The fact that he was to testify in behalf of the defendant was known to plaintiff's counsel. While Dr. Gormly was being examined as a witness for plaintiff, questions were asked him which were not of a factual nature but which called for an expression of an opinion. On objection being made that Dr. Gormly could not be compelled to testify against his will as an expert, the court so ruled and a recess was taken to enable plaintiff's counsel to confer with the doctor. When testimony was resumed, it was announced that Dr. Gormly would testify as an expert. His testimony was to the effect that defendant had treated the case with that diligence and skill which would be expected of the ordinary doctor in his locality at the present time. According to the medical testimony, the defendant met the requirements as to skill and care as established in Bigney v. Fisher, 26 R. I. 402, 59 A. 72, where the court said: "'The implied contract of a physician or surgeon is not to cure—to restore a fractured limb to its natural perfectness,' * * * but to treat the case with that degree of diligence and skill which are ordinarily possessed by the average of the members of the profession in good standing, in similar localities, regard being

always had to the state of the medical profession at the time. * * * And, if he do this, he discharges his full liability."

[3, 4] The plaintiff's parents testified as to statements made to them by the defendant which it is contended were admissions of negligence on his part. The defendant denied making such statements as testified to by plaintiff's parents. In his charge to the jury the trial justice said: "Of course, the first question is for you to determine whether they were said or not. * * * But if you find that they were made, it is necessary for you to go a step further and decide just what they mean, after all. Were they admissions of negligence on the part of the Doctor? Or were they simply admissions of regret and statements to the effect that he hadn't accomplished what he wished that he had accomplished. Are they, in other words, admissions that he didn't do what he might have done, and what he might reasonably have accomplished had he used the skill that he said, or are they simply statements of regret, and acknowledgment of the fact that he didn't do what he wished that he had. * * * Now, I am not saying, I am not determining this for you gentlemen in any way, I am simply trying to bring this before you so that you will consider it and see if you can determine just what they are and just what they mean, if anything. I don't want you to get the idea from anything I have said or from any illustration that I have used that I am attempting to direct you in any way, because it is for you to determine what the fact is here, and the main fact is whether the Doctor was negligent or not; but it is my business to try and make clear to you what the issue is and how you are to go about it, and just how you are to look at various parts of the testimony that has been placed before you." To this part of the charge the plaintiff took exception as being prejudicial to him and in support of his exception urges that the meaning of the statements, which it is alleged the defendant made, was not an issue for the jury; that the only issue was that, if the statements alleged to have been made were found by the jury to have been actually made, they were evidence of an acknowledgment of guilt on the part of the defendant and required no instructions from the trial justice as to their meaning.

It is not entirely clear that the statements attributed to the defendant are not susceptible of more than one meaning. They are not an unequivocal acknowledgment of negligence within the meaning of the term as applied to the conduct of a physician in the particular case. If the defendant said: "It is my fault. I am to blame" or that "I wish I had been a hundred miles away when it happened," it might be that he meant it was his fault because he had committed an error of judgment, and for this he would not be responsible. Barker v. Lane, supra; Markart v. Zeimer, 67 Cal. App. 363, 227 P. 683. Furthermore, the statements, as suggested by the trial justice, might be taken as an expression of regret at the unfortunate outcome of the case. We therefore see no error in his instructions to the jury in pointing out to them the possible meaning which might be ascribed to the words alleged to have been used. It was made very clear in the charge that the jury were to determine this meaning for themselves and that the court was not attempting to direct them in any way but simply trying to assist them. The exception to the charge to the jury is overruled.

All plaintiff's exceptions are overruled and the case is remitted to the superior court for the entry of judgment on the verdict.

---

## JORDAN et al. v. McKAY.

Supreme Judicial Court of Maine.
April 29, 1933.

**1. Judgment ⟹108.**

On defendant's omission to answer over after denial of abatement motion, court properly entered default and closed case by assessing damages for not till then could cause be certified to law court (Rev. St. 1930, c. 91, § 28; c. 96, § 37).

**2. Attachment ⟹208.**

Nominal attachment of chip sufficiently complies with statute providing for service of summons when goods or estate are attached (Rev. St. 1930, c. 95, § 17).

**3. Constitutional law ⟹309(2).**
**Judgment ⟹17(1).**

Leaving summons at resident defendant's last and usual place of abode confers jurisdiction to enter personal judgment and does not deny due process (Rev. St. 1930, c. 95, § 17; Const. U. S. Amend. 14).

---

Exceptions from Superior Court, Cumberland County.

Action by E. Linwood Jordan and others against John A. McKay. Defendant's motion to dismiss having been denied and a default having been entered and damages assessed, defendant brings exceptions.

Exceptions overruled.