**Michael DiFRANCO et al.**

**v.**

**Carine R. KLEIN, M.D., et al.**

**93–588–Appeal.**

Supreme Court of Rhode Island.

April 18, 1995.

Child who was born with facial nerve palsy brought medical malpractice action against delivering physician. The Superior Court, Providence County, Gibney, J., entered judgment on jury verdict for physician, and both parties appealed. The Supreme Court, Murray, J., held that: (1) child's objection to instruction on medical judgment was sufficient to preserve error; (2) use of phrases "good faith," "good faith judgment," "honest mistake," and "honest error in judgment" in medical judgment instruction tended to create confusion among jurors by erroneously implying that only bad faith or dishonest deviations from standard could constitute negligence and required new trial; and (3) trial court did not err in denying physician's motion for directed verdict.

Judgment vacated and remanded for new trial.

**1. Appeal and Error ⚷230**

Rationale behind rule requiring party to object to instruction to instruction before jury begins deliberations in order to preserve instruction as error is to allow trial justice opportunity to make any necessary corrections to his or her instructions before jury begins its deliberations. Superior Court Rules Civ.Proc., Rule 51(b).

**2. Appeal and Error ⚷230, 231(9)**

Although Supreme Court will not apply rule requiring party to object to instruction to instruction before jury begins deliberations in order to preserve instruction as error in overly stringent manner, counsel's objection must be specific enough to apprise trial justice of precise nature of alleged error in question and timely enough to enable justice to take any necessary corrective action. Superior Court Rules Civ.Proc., Rule 51(b).

**3. Appeal and Error ⚷230**
**Trial ⚷277**

Although compliance with rule requiring party to object to instruction before jury begins deliberations in order to preserve instruction as error is mandatory precondition for preserving exception to jury instruction, reviewing court will not use rigid adherence to rule as vehicle for overlooking or evading trial errors, and no particular form of objection is required so long as it is clear that trial justice has been alerted to possible errors in charge. Superior Court Rules Civ.Proc., Rule 51(b).

**4. Appeal and Error ⚷232(3)**

Colloquy in which counsel for physician expressed surprise that medical judgment instruction would be given, trial justice in response stated that to extent counsel disagreed with instruction it was noted and later asked if there were any objections "besides that one," and counsel stated that "those are my only exceptions" was sufficient to apprise trial justice of nature of counsel's objection to instruction and preserved alleged error of use of instruction. Superior Court Rules Civ.Proc., Rule 51(b).

**5. Physicians and Surgeons ⚷14(2)**

Under "medical judgment doctrine" or "error in judgment doctrine," as long as physician exercises applicable degree of care, he or she may choose between differing but accepted methods of treatment and not be held liable.

See publication Words and Phrases for other judicial constructions and definitions.

**6. Physicians and Surgeons ⚷15(1)**

When physician exercises same degree of skill and diligence which is commonly possessed by other physicians in good standing, who are engaged in same type of practice in similar localities, he or she is not negligent in choosing treatment that later proves to be unsuccessful so long as treatment chosen was appropriate treatment based on information then available to reasonably prudent doctor in like circumstances.

**7. Appeal and Error ⚯1064.1(8)**
**Physicians and Surgeons ⚯18.100**

Medical judgment instruction in malpractice action which used phrases "good faith," "good faith judgment," "honest mistake," and "honest error in judgment" tended to create confusion among jurors and required new trial following entry of judgment for physician; terms used in instruction erroneously implied that only dishonest or bad-faith deviations from applicable standard of care constitute negligence, and to extent phrases injected physician's subjective intent or belief into applicable standard as relevant factor they misstated pertinent law.

**8. Physicians and Surgeons ⚯18.90**

Issue of whether physician's choice of forceps used during delivery of child complied with applicable standard of care was for jury in medical malpractice action brought by child who suffered from facial nerve palsy after birth where expert witness's testimony that physician's choice of forceps was based on assumption at odds with facts contained in medical records was based on competent evidence.

---

Suzanne McGrath, E. Paul Grimm, David Morowitz, Decof & Grimm, Providence, for plaintiff.

David W. Carroll, Roberts, Carroll, Feldstein & Peirce, Providence, for defendant.

OPINION

MURRAY, Justice.

This case comes before us on an appeal by the plaintiffs, Michael DiFranco and Laurie DiFranco (the DiFrancos) as next of friends of their minor child Michael DiFranco, Jr., and a cross-appeal by the defendants, Dr. Carine R. Klein and Women & Infants Hospital of Rhode Island (defendants). The DiFrancos contend that the trial justice erred in instructing the jury on the applicable standard of care in medical-malpractice cases. On cross-appeal the defendants counter that the trial justice erred in failing to grant their motion for a directed verdict at the close of all the evidence. For the reasons set forth below, we vacate the judgment in favor of the defendants and remand the case to the Superior Court for a new trial.

Michael DiFranco, Jr. (Michael), was born at Women & Infants Hospital on December 14, 1977. He was delivered by Dr. Klein, an employee of defendant-hospital. Since his birth Michael has been afflicted with right facial nerve palsy, a condition that persists to this day. At trial the DiFrancos alleged through their expert witnesses that Michael's nerve palsy was caused by Dr. Klein's misapplication and misuse of Elliot forceps during the delivery. In contrast, defendants' expert witnesses testified that Dr. Klein complied with the applicable standard of care and, further, that Michael's facial paralysis was unrelated to the use of Elliot forceps. The case was ultimately submitted to the jury, who returned a verdict in favor of defendants.

On appeal the DiFrancos contend that the trial justice committed reversible error in charging the jury as follows:

> "When a doctor's decision depends on exercise of judgment, the law requires only that the judgment be made on good faith and in accordance with accepted medical standards and practice in similar localities at the time alleged. Where according to accepted medical practice the diagnosis and course of treatment involved are matters to be subjected to the judgment of the physician, a physician must be allowed the exercise of that judgment and she cannot be held liable even if in the exercise of that good faith judgment she has made a mistake as to the course of treatment taken.
>
> "The practice of medicine is an inexact science, and where there is a reasonable doubt as to the nature of the condition involved or where there is a reasonable doubt as to what should be done in accordance with recognized authority and good medical practice, a physician is not liable for damages resulting from an honest mistake or error in judgment. When a physician possesses and exercises the degree of care and skill possessed and used by other physicians practicing in the same or similar localities, she is not responsible even for a mistake of judgment."

Specifically, the DiFrancos aver that by instructing the jury that the defendants could not be held liable for an honest mistake or good-faith errors in judgment, the trial justice gave an instruction that was not warranted by the evidence and which created a likelihood of confusing the jury on the issue of negligence. The defendants counter that the DiFrancos failed to adequately preserve any objections to the trial justice's instructions and, even if the issues were properly preserved, the instructions as given were proper.

[1] It is well settled that under Rule 51(b) of the Superior Court Rules of Civil Procedure "[n]o party may assign as error the giving or failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict, stating distinctively the matter to which the party objects and the grounds of the party's objection." *See Brodeur v. Desrosiers*, 505 A.2d 418, 421–22 (R.I.1986); *Cannone v. New England Telephone and Telegraph Co.*, 471 A.2d 211, 214–15 (R.I.1984). The rationale behind this rule is to allow the trial justice an opportunity to make any necessary corrections to his or her instructions before the jury begins its deliberations. *Brodeur*, 505 A.2d at 422; *A.R. Alvernas, Inc. v. Cohen*, 420 A.2d 78, 81 (R.I.1980); *Johnson v. Palange*, 122 R.I. 361, 373, 406 A.2d 360, 366 (1979).

[2] Although this court will not apply Rule 51(b) in an overly stringent manner, *Brodeur*, 505 A.2d at 422; *A.R. Alvernas, Inc.*, 420 A.2d at 82, counsel's objection must be specific enough to apprise the trial justice of the precise nature of the alleged error in question and timely enough to enable the justice to take any necessary corrective action. *Brodeur*, 505 A.2d at 422; *Tucker v. Mammoth Mart Inc.*, 446 A.2d 760, 762 (R.I. 1982); *A.R. Alvernas, Inc.*, 420 A.2d at 81. As such, "general objections, without specific statements of the grounds therefor, [are] clearly insufficient under Rule 51(b) and thus present nothing for us to review." *Palange*, 122 R.I. at 373, 406 A.2d at 366.

In the instant case, immediately after the trial justice finished instructing the jury, the following colloquy took place between plaintiffs' counsel and the trial justice at sidebar:

"Mr. McCambridge: Your Honor, in preparing my jury instructions I was in with Mark Decof reviewing Mr. Carroll's request for instructions. Mark told me you would not give instructions regarding medical judgment that that is not your usual charge.

"THE COURT: He may have had a case that I didn't. I have had several since then where I have. So, to the extent you disagree with that, its noted.

"Mr. McCambridge: Okay. May I ask you—I'm just trying—I'm not sure there is anything I can ask you to do at this point, I may not, about what your reasoning is now, to give that charge or has that become your current charge on medical mals?

"THE COURT: That is my charge. Do you have specific objections besides that one?

"Mr. McCambridge: I would—no, those are my only exceptions, so they're noted."

[3] Although compliance with Rule 51(b) is a mandatory precondition for preserving an exception to a jury instruction, we "will not use rigid adherence to Rule 51(b) as a vehicle for overlooking [or evading] trial errors." *Brodeur*, 505 A.2d at 422; *accord A.R. Alvernas, Inc.*, 420 A.2d at 81–82 (objection to jury instructions will not be viewed with an "eagle eye" as a vehicle for overlooking trial errors). Likewise, no particular form is required "so long as it is clear that the trial justice has been alerted to possible errors in [the] charge." *Smith Development Corp. v. Bilow Enterprises, Inc.*, 112 R.I. 203, 211, 308 A.2d 477, 482 (1973); *see Majewski v. Porter*, 121 R.I. 757, 765, 403 A.2d 248, 252 (1979) (no particular phraseology demanded).

[4] With these principles in mind, we note that in response to counsel's surprise that a medical-judgment instruction would be given, the trial justice, after noting that this was her usual charge in such cases, responded, "[s]o, to the extent you disagree with [the giving of the medical-judgment charge], *its noted.*" (Emphasis added.) Moments later

she again stated that "[t]hat is my charge. Do you have specific objections *besides that one,*" clearly referring to the medical-judgment instruction. (Emphasis added.) In response counsel stated, "no, those are my only exceptions, so they're noted." Clearly, the whole tenor of the above exchange concerned the giving of the medical-judgment instruction.

Therefore, we are of the opinion that, in toto, the above colloquy sufficiently apprised the trial justice of the precise nature of counsel's objection and afforded her an adequate opportunity to make any corrections to her instructions before the jury retired. *See A.R. Alvernas, Inc.,* 420 A.2d at 81; *Palange,* 122 R.I. at 373, 406 A.2d at 366; *Seabra v. Puritan Life Insurance Co.,* 117 R.I. 488, 503–04, 369 A.2d 652, 661 (1977); *Smith Development Corp.,* 112 R.I. at 211, 308 A.2d at 482. This is all that Rule 51(b) and our case law requires. *Id.* As such, we now turn to address the merits of the DiFrancos' claims that the trial justice's instructions created a likelihood that the jury would be confused on the issue of negligence and were simply not warranted by the evidence presented.

[5] It is well settled in Rhode Island that when a physician undertakes to treat or diagnose a patient, he or she is under a duty to exercise "the same degree of diligence and skill which is commonly possessed by other members of the profession who are engaged in the same type of practice in similar localities having due regard for the state of scientific knowledge at the time of treatment." *Wilkinson v. Vesey,* 110 R.I. 606, 613, 295 A.2d 676, 682 (1972) (citing *Bigney v. Fisher,* 26 R.I. 402, 59 A. 72 (1904)); *see Schenck v. Roger Williams General Hospital,* 119 R.I. 510, 515, 382 A.2d 514, 517 (1977); *Marshall v. Tomaselli,* 118 R.I. 190, 196, 372 A.2d 1280, 1283–84 (1977). In an older line of cases, this court has held that as long as a physician exercises the applicable degree of care, he or she may choose between differing but accepted methods of treatment and not be held liable. *Barker v. Lane,* 23 R.I. 224, 225, 49 A. 963, 963 (1901); *see Coleman v. McCarthy,* 53 R.I. 266, 269, 165 A. 900, 902 (1933). This has become known as the "medical judgment" or "error in judgment" doctrine. Since *Coleman,* though, no case before this court has explicitly dealt with the doctrine. *Cf. Vigue v. John E. Fogarty Memorial Hospital,* 481 A.2d 1, 6 (R.I.1984) (Shea, J. dissenting) ("[p]hysicians are required to exercise their independent judgment on matters that may mean the difference between life and death").

[6] However, because a physician's professional judgment is such a fundamental and indispensable element of practicing medicine, we now take this opportunity to reaffirm *Barker* and *Coleman* 's basic validity. When a physician exercises the same degree of skill and diligence which is commonly possessed by other physicians in good standing, who are engaged in the same type of practice in similar localities, *Wilkinson,* 110 R.I. at 613, 295 A.2d at 682 (citing *Bigney v. Fisher, supra* ), he or she is not negligent in choosing a treatment that later proves to be unsuccessful so long as the treatment chosen was an appropriate treatment based on the information then available to a reasonably prudent doctor in like circumstances. *Barker,* 23 R.I. at 225, 49 A. at 963; *see Coleman,* 53 R.I. at 270, 165 A. at 902; *see also Ouellette v. Subak,* 391 N.W.2d 810, 816 (Minn.1986) (choice of treatment not negligent if at time choice made, it was an accepted treatment based on the information then available).

[7] However, in the instant case we believe such phrases as "good faith," "good faith judgment," "honest mistake," and "honest error in judgment" contained in the trial justice's charge to the jury tend to create confusion among jurors by erroneously implying that only dishonest or bad-faith deviations from the applicable standard of care constitute actionable negligence. *See, e.g., Shumaker v. Johnson,* 571 So.2d 991, 994 (Ala.1990) ("good-faith error * * * charge should not be given in medical malpractice cases because of its potential for confusing the jury"); *Wall v. Stout,* 310 N.C. 184, 193, 311 S.E.2d 571, 577 (1984) (term "honest error" could easily be interpreted by the jury to mean that a physician could not be liable for negligence unless he or she was somehow dishonest); *Shamburger v. Behrens,* 380 N.W.2d 659, 663 (S.D.1986) (use of phrase " 'good-faith error in judgment' " in charging

the jury "unduly confuses the issues in a negligence action"); *Teh Len Chu v. Fairfax Emergency Medical Associates, Ltd.*, 223 Va. 383, 386, 290 S.E.2d 820, 822 (1982) (terms such as " 'honest mistake' " and " 'bona fide error' " have no place in jury instructions dealing with medical malpractice as they defy rational definition). In fact, to the extent such phrases inject the physician's subjective intent or belief into the applicable standard of care as a relevant factor, they misstate the pertinent law. *Wilkinson,* 110 R.I. at 613, 295 A.2d at 682 (quoting *Bigney, supra*); *Barker,* 23 R.I. at 225, 49 A. at 963; *see Roger Williams General Hospital,* 119 R.I. at 515, 382 A.2d at 517; *Tomaselli,* 118 R.I. at 196, 372 A.2d at 1283–84.

Therefore, because these phrases unduly confuse the issues in a negligence action by obscuring and misstating the physician's obligation to utilize the degree of care, skill, and diligence required by law, we are of the opinion that the likely prejudice resulting to the DiFrancos requires that the judgment in favor of defendants be vacated and the case remanded for a new trial. *See Anter v. Ambeault,* 104 R.I. 496, 501, 245 A.2d 137, 139 (1968) (erroneous charge is reversible error if it can be shown that the jury " 'could have been misled' "); *see also Brimbau v. Ausdale Equipment Rental Corp.*, 440 A.2d 1292, 1298 (R.I.1982) (test is how a panel of ordinary and intelligent lay people would construe the charge). Given our disposition and remand of the case for new trial, we decline to reach the DiFrancos' claim that the medical-judgment instruction was not warranted in light of the evidence presented at trial.

[8] With respect to the defendants' cross-appeal, we are of the opinion that there remained an "issue[ ]upon which reasonable persons might draw conflicting conclusions," namely, Dr. Klein's choice of forceps. *Palmisciano v. Burrillville Racing Association,* 603 A.2d 317, 320 (R.I.1992). Although the defendants assert that the opinion of the DiFrancos' expert witness concerning Dr. Klein's choice of forceps was based on an assumption at odds with the facts contained in the medical records prepared by the defendants, we believe the expert's opinion was sufficiently based on competent evidence. *But see San Antonio v. Warwick Club Ginger Ale Co.,* 104 R.I. 700, 248 A.2d 778 (1968) (directed verdict warranted when at the time plaintiff rested her case there was no evidence whatsoever from which the jury could have found negligence). As such, the trial justice did not err in denying the defendants' motion for directed verdict.

Consequently the plaintiffs' appeal is sustained to the extent noted above. The judgment entered in favor of the defendants is vacated, and the case is remanded to the Superior Court for a new trial consistent with this opinion.

**STATE**

**v.**

**William MANIATIS.**

**No. 93–225–C.A.**

Supreme Court of Rhode Island.

April 18, 1995.

Defendant was convicted after jury trial in the Superior Court, Providence County, Darigan, J., of first-degree sexual assault and five counts of second-degree sexual assault. Defendant appealed. The Supreme Court, Shea, J., held that: (1) trial court properly refused to allow impeachment of state's witness through use of his juvenile record; (2) trooper's report was inadmissible either as business record or as evidence of inconsistent prior statement; (3) defendant was not entitled to requested instruction that victims' failure to report crimes could be considered in evaluating their credibility; and (4) sentence imposed on defendant was not excessive.

Affirmed.